UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| PAMELA BAYE and SYLVAN BAYE, | ) ) ) | CIV. 07-5056-KES |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| THE DIOCESE OF RAPID CITY, a South Dakota not for profit corporation, | ) ) ) ) ) | |
| Defendant. | ) | |

Defendant, The Diocese of Rapid City, moves for summary judgment on the basis that the statute of limitations has expired. Plaintiffs, Pamela Baye and Sylvan Baye, resist the motion.

**BACKGROUND**

The facts viewed in the light most favorable to plaintiffs are:

Pamela suffered severe verbal, physical, and sexual abuse from her parents and numerous other individuals throughout her entire childhood. As a result of the horrific circumstances surrounding her upbringing, Pamela developed a dissociative identity disorder.[1] She also suffers from depression, major anxiety, anorexia, and posttraumatic stress disorder.

---

[1] "Dissociative identity disorder" was formerly referred to as "multiple personality disorder." See Stedman's Medical Dictionary 569 (28th ed. 2006).

As a young adult, Pamela went to various clinics and counselors for help. In 1987, she went to a parish in Philip, South Dakota, and sought counseling from Father Scadron. During one of the meetings, Father Scadron, who was 67 years old at the time, attacked and raped Pamela. After the assault, Father Scadron told Pamela that she and her children would go to hell if she ever told anyone about what had happened. Pamela was 23 years old at the time of the assault.

Pamela did not remember the assault by Father Scadron. Essentially, she was in the church one moment, then she was at home the next, with no idea how she got there. Neither Pamela, nor anyone else, suspected that Father Scadron had done anything inappropriate with Pamela. Father Scadron died on July 4, 2002. Then, on June 11 or 12, 2006, Pamela recovered the memory of the sexual assault during the course of her therapy. On August 9, 2007, plaintiffs filed this suit against defendant.[2]

**ANALYSIS**

Defendant argues that plaintiffs' claims are barred by the statute of limitations because the causes of action accrued approximately 19 years

---

[2] The complaint alleges various claims arising from the alleged sexual assault against Pamela, including: (1) assault and battery; (2) sexual abuse; (3) intentional infliction of emotional distress; (4) breach of fiduciary duty; (5) negligent hiring, supervising, warning, documenting and/or retaining; (6) fiduciary fraud and conspiracy to commit fiduciary fraud; and (7) loss of spousal consortium.

prior to the filing of the complaint.  Plaintiffs argue that the causes of action did not accrue until Pamela became aware of the sexual assault on June 11 or 12, 2006, or that the statutes of limitations were otherwise tolled.[3]

In addressing a motion for summary judgment, the evidence must be viewed "most favorably to the non-moving party and the burden of proof is on the moving party to show that there are no genuine issues of material fact." One Star v. Sisters of St. Francis, Denver, Colo., 752 N.W.2d 668, 674 (S.D. 2008) (citing Wulf v. Senst, 669 N.W.2d 135, 141 (S.D. 2003)).  "When faced with a summary judgment motion where the defendant asserts the statute of limitations as a bar to the action and presumptively establishes the defense by showing the case was brought beyond the statutory period, the burden shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations." Id. at 675 (internal quotations and citations omitted).  "Generally a statute of limitations question is left for the jury; however, deciding what constitutes accrual of a cause of action is a question of law[.]" Id. (internal quotations and citations omitted).

The applicable statutes of limitations in this case are determined by South Dakota law.  See Larsen v. Mayo Med. Ctr., 218 F.3d 863, 866 (8th

---

[3] Plaintiffs concede that Sylvan Baye's claim for loss of consortium is properly dismissed if the underlying claims arising from the sexual abuse of Pamela Baye are dismissed.  See Selchert v. Lien, 371 N.W.2d 791, 794 (S.D. 1985) (noting that the validity of a loss of consortium claim "depends upon the validity of the main cause of action" (citation omitted)).

3

Cir. 2000). The assault and battery claim is governed by SDCL 15-2-15.[4]
The remaining claims are governed by SDCL 15-2-14.[5]

I.   **Whether a Cause of Action Accrues Under SDCL 15-2-14 and 15-2-15 When the Tort Occurs or When the Tort is Discovered.**

Plaintiffs contend that their causes of action did not accrue until plaintiffs had an awareness that they suffered an injury or that defendant committed a legal wrong that resulted in harm to plaintiffs. In essence, plaintiffs are contending that their causes of action did not accrue until Pamela "discovered" she had been raped by Father Scadron.

The South Dakota Supreme Court and Legislature have rejected the discovery rule absent fraudulent concealment or specific statutory language. Shippen v. Parrott, 506 N.W.2d 82, 85-86 (S.D. 1993), abrogated by Jensen v. Kasik, 758 N.W.2d 87, 89 (S.D. 2008). See also Kurylas, Inc. v. Bradsky, 452 N.W.2d 111, 114 (S.D. 1990); Alberts v. Giebink, 299 N.W.2d 454, 455 (S.D. 1980). In Shippen, the South Dakota Supreme Court addressed whether "the trial court err[ed] in applying the discovery rule in tolling the

---

[4] SDCL 15-2-15 states: "Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within two years after the cause of action shall have accrued: (1) An action for libel, slander, assault, battery, or false imprisonment[.]"

[5] SDCL 15-2-14 states: "Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within three years after the cause of action shall have accrued: . . . (3) An action for personal injury."

4

statute of limitations[.]" 506 N.W.2d at 84. The court found that the plaintiff's claims were not tolled because of his " 'repression or post-traumatic stress disorder[.]' " Id. at 86. The court rejected the argument "that an applicable statute of limitations does not begin to run until the harm is discovered rather than when the harm occurred." Id. at 85. Thus, under SDCL 15-2-14 and SDCL 15-2-15, a cause of action for a personal injury claim accrues when the offense occurred, not when the offense is discovered. See id. at 85-86. See also Jacobson v. Leisinger, 746 N.W.2d 739, 746 (S.D. 2008) (stating that under SDCL 15-2-15, "[g]enerally the accrual date for a defamation action begins on the publication of the defamatory act" (citations omitted)); Koenig v. Lambert, 527 N.W.2d 903, 905 (S.D. 1995) (concluding that under SDCL 15-2-14, "the three year period starts to run from the last occurrence of tortious conduct, rather than three years from the discovery of the harm"), overruled on other grounds by Stratmeyer v. Stratmeyer, 567 N.W.2d 220 (S.D. 1997).

Plaintiffs argue that the continued validity of Shippen is in doubt because it was overruled by Jensen v. Kasik, 758 N.W.2d 87 (S.D. 2008). Id. at 89. In Shippen, however, the South Dakota Supreme Court articulated "five separate discussions and holdings." Shippen, 506 N.W.2d at 84. Jensen only overruled that part of Shippen's holding that addressed SDCL 15-2-22, which extends the time period for bringing a cause of action

5

when one is mentally ill; the discussion relating to SDCL 15-2-14 and 15-2-15 was not overruled. See Jensen, 758 N.W.2d at 89 (overruling Shippen "[t]o the extent that" it held that SDCL 15-2-22 provided a "maximum five-year period in which to bring a cause of action in the event of a disability"). Thus, Shippen's discussion about the inapplicability of the discovery rule under SDCL 15-2-14 and 15-2-15 is still controlling.

Plaintiffs also argue that the present case is distinguished from Shippen because the plaintiff in that case did not repress the memories of the actual assault like Pamela did. But in Shippen, the South Dakota Supreme Court specifically rejected the trial court's holding that the plaintiff's " 'repression or post-traumatic stress disorder' caused [the plaintiff] not to discover a tort upon him." Id. at 85-86 (emphasis added). Thus, Shippen is analogous to this case because the victim in both cases "repressed" the memories of the "tort" until a later date.

Plaintiffs rely on the language in Spencer v. Estate of Spencer, 759 N.W.2d 539 (S.D. 2008), which indicates that a cause of action accrues when a person "has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him." Id. at 544 (internal quotations and citations omitted). In Spencer, the alleged wrongdoing occurred sometime in 1974, and the plaintiffs were unaware of the existence

6

of the wrongful behavior until 1984. Id. The plaintiffs did not bring the cause of action, however, until 2006. Id. The South Dakota Supreme Court found that the plaintiffs had "actual knowledge" of the alleged wrongdoing as early as 1984 and therefore concluded that the "causes of action accrued in 1984[.]" Id.

Spencer is not applicable to this case for two reasons. First, that case did not involve SDCL 15-2-14 or SDCL 15-2-15.[6] Id. at 543 n.2 (identifying SDCL 15-3-2, SDCL 21-51-1, SDCL 43-28-22, and SDCL 15-3-15 as the applicable statutes). Cf. Jacobson, 746 N.W.2d at 746 (stating that "none of the cases cited specifically interpret SDCL 15-2-15" in determining that a cause of action for defamation accrues when the defamation occurs). Second, the issue in Spencer was not whether the cause of action accrued when the tort occurred. Spencer, 759 N.W.2d at 544 (holding that the statute of limitations barred the claim because the plaintiffs had "actual knowledge of the same alleged wrong and the same alleged injury" for approximately 22 years prior to when "they first sought redress").

---

[6] Plaintiffs cite numerous other cases in support of their argument that a cause of action accrues when the underlying wrongdoing is discovered. None of those cases, however, involved SDCL 15-2-14 or SDCL 15-2-15. See Zephier v. Catholic Diocese of Sioux Falls, 752 N.W.2d 658 (S.D. 2008) (applying SDCL 26-10-25); One Star v. Sisters of St. Francis, 752 N.W.2d 668 (S.D. 2008) (same); Huron Ctr., Inc. v. Henry Carlson Co., 650 N.W.2d 544 (S.D. 2002) (applying SDCL 15-2-13); Wissink v. Van De Stroet, 598 N.W.2d 213 (S.D. 1999) (same); Strassburg v. Citizens State Bank, 581 N.W.2d 510 (S.D. 1998) (same).

Instead, the court held that the statute of limitations barred the plaintiffs' claim because they had known about the alleged wrong long before the statute of limitations expired. See id.

Plaintiffs also argue that South Dakota's public policy favors interpreting the phrase "after the cause of action shall have accrued" to mean that a cause of action accrues after the individual discovers the abuse. In support of this argument, plaintiffs rely on SDCL 26-10-25, which states that a cause of action stemming from "childhood sexual abuse shall be commenced within . . . three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act[.]" That statute, however, is clearly limited to "childhood sexual abuse" claims and does not apply to sexual abuse of adults.

While it is tempting to apply to this case the same rationale associated with the childhood sexual abuse accrual provision in SDCL 26-10-25 because the alleged attack by Father Scadron caused Pamela to repress the attack much like a child might, the controlling statute in this case is SDCL 15-2-22.[7] Under SDCL 15-2-22, the legislature specified that five years is

---

[7] SDCL 15-2-22 states:

> If a person entitled to bring an action other than for the recovery of real property, except for a penalty or forfeiture, or against a sheriff or other officer for an escape, was at the time the cause of action accrued[:] . . . (2) Mentally ill; the time of the person's disability is not part of the time limited for the commence of the action. The

8

the maximum period of extension when an adult suffers from mental illness. See SDCL 15-2-22 ("The period within which the action shall be brought cannot be extended more than five years by any disability except infancy[.]" (emphasis added)). SDCL 15-2-22 does not include a "discovery" accrual provision for adult victims like SDCL 26-10-25 does for child victims. If the cause of action did not accrue until an adult who suffered from mental illness discovered the underlying acts that constituted the sexual assault, then the time period for bringing a cause of action would be extended for as long as the individual suffered from a mental illness. Such an interpretation would effectively negate the maximum five-year extension found in SDCL 15-2-22.[8]

Thus, the court finds that the phrase, "after the cause of action shall have accrued," as used in SDCL 15-2-14 and SDCL 15-2-15, means that a cause of action accrues once the tort occurs, not when the tort is discovered

---

period within which the action shall be brought cannot be extended more than five years by any disability except infancy, nor can it be extended in any case longer than one year after the disability ceases.

[8] Pamela had seven years since the alleged attack to bring a claim under SDCL 15-2-15 and eight years under SDCL 15-2-14. See Jensen, 758 N.W.2d at 89 ("In this case, as the result of her disability Jensen was required to commence her action within five years after the expiration of the original limitations period, which was three years."). Because approximately 19 years passed between the filing of the complaint and the date the cause of action accrued, SDCL 15-2-22 does not sufficiently extend the statute of limitations.

9

to have occurred.[9]  Jacobson, 746 N.W.2d at 746; Shippen, 506 N.W.2d at 84-86.  Furthermore, South Dakota's public policy indicates that there is a maximum five-year extension in cases involving an adult who suffers from a mental illness.  See SDCL 15-2-22.

Pamela's cause of action accrued in 1987 when Father Scadron allegedly attacked her.  Pamela filed this suit on August 9, 2007, approximately 19 years after the attack occurred.  Therefore, defendant has "presumptively establishe[d] the defense by showing the case was brought beyond the statutory period[.]"  One Star, 752 N.W.2d 675 (internal quotations and citations omitted).  Thus, "the burden shifts to the plaintiff[s] to establish the existence of material facts in avoidance of the statute of limitations."  Id. (internal quotations and citations omitted).

## II.   Whether the Statutes of Limitations Were Tolled.

Plaintiffs argue that the statutes of limitations were tolled under the doctrine of equitable tolling.  "To equitably toll a statute of limitations, the plaintiff must demonstrate (1) timely notice, (2) lack of prejudice to the defendant, and (3) reasonable, good-faith conduct by the plaintiff."  Pecoraro

---

[9] This interpretation is also consistent with the decision in Jensen, 758 N.W.2d at 89, which held that the maximum time period under SDCL 15-2-22 was eight years when a person suffers from a mental illness at the time the cause of action accrued.  Id. at 89 ("In this case, as the result of her disability Jensen was required to commence her action within five years after the expiration of the original limitations period, which was three years.").

10

v. The Diocese of Rapid City, 435 F.3d 870, 875 (8th Cir. 2006) (quoting Dakota Truck Underwriters v. S.D. Subsequent Injury Fund, 689 N.W.2d 196, 202 (S.D. 2004)).

Assuming that plaintiffs provided timely notice of the claim and that they acted with reasonable, good-faith conduct, plaintiffs have nonetheless failed to demonstrate a lack of prejudice to defendant in this case. As stated by the South Dakota Supreme Court in Openhowski v. Mahone, 612 N.W.2d 579 (S.D. 2000), statutes of limitations are "designed to eliminate fraudulent and stale claims[.]" Id. at 582. Father Scadron died almost three years prior to the filing of this law suit. If this case were to continue, defendant would be forced to litigate a 19-year-old claim without a key witness and an important source of information. Thus, the prejudicial effects of a stale claim are clearly present in this case. Because plaintiffs have not demonstrated a lack of prejudice to defendant, the doctrine of equitable tolling does not apply.

Plaintiffs also argue that the statutes of limitations are tolled because defendant fraudulently concealed the cause of action. "Fraudulent concealment is an implied exception to the statute of limitations. When applicable, the exception tolls the statute of limitations until the cause of action is discovered or might have been discovered by the exercise of diligence." One Star, 752 N.W.2d at 681 (citation omitted). "If a trust or

confidential relationship exists, an affirmative duty to disclose is imposed, and mere silence by the party under that duty constitutes fraudulent concealment." Id. (citation omitted). "The silence must concern defects which the party with the duty to disclose knew or should have known." Id. (citation omitted).

Defendant argues that there could be no fraudulent concealment because it did not have knowledge of the alleged sexual assault.[10] Plaintiffs argue that there is a material question of fact as to whether the fraudulent concealment doctrine tolls the statutes of limitations because defendant knew or should have known about Father Scadron's propensity to commit a sexual assault.

Here, plaintiffs have not identified any evidence showing that defendant knew about the alleged sexual assault committed against Pamela by Father Scadron until Pamela recovered her memory of the assault. And defendant has come forward with evidence that it in fact did not know about the alleged sexual assault committed against Pamela. (Defs.' Statement of Undisputed Material Facts in Support of Its Mot. for Summ. J., Docket 25, at 4-6; Aff. of Blase Cupich, Docket 26; Aff. of Margaret Simonson, Docket 27.) Accordingly, defendant could not have "fraudulently concealed

---

[10] The court assumes, without deciding, that a trust or confidential relationship existed in this case.

something" that it did not know.[11]  See One Star, 752 N.W.2d at 682 ("Therefore, [the defendant] could not, as a matter of law, have fraudulently concealed . . . something that [the plaintiffs] alone knew."); Cf. Koenig, 527 N.W.2d at 906 ("[S]ilence on the part of the Diocese, <u>if it in fact knew of the misconduct</u> by Lambert, is enough to constitute fraudulent concealment and toll the statute of limitations." (emphasis added)).[12]

The court also rejects plaintiffs' argument that the doctrine of fraudulent concealment would nonetheless apply because defendant should have known that Father Scadron had a propensity for sexual misconduct or that there was an increased risk that he would sexually assault someone. Plaintiffs attempt to create a material issue of fact with regard to whether defendant should have known about Father Scadron's propensity to sexually assault someone by emphasizing certain facts about his reputation

---

[11] This reasoning also applies to the claim of fiduciary fraud and conspiracy to commit fiduciary fraud which alleges that defendant "knew that it misrepresented, concealed or failed to disclose information relating to sexual misconduct of Father Scadron" and that "[u]pon information and belief, employees and/or agents of Rapid City Diocese, with an intent to conceal and defraud, conspired and came to a meeting of the minds whereby they would misrepresent, conceal or fail to disclose information relating to the sexual misconduct of Father Scadron[.]"  (Docket 1, at 12-13.)

[12] In One Star, the South Dakota Supreme Court stated the reason for this rule: " 'If plaintiff's approach were to prevail, then any time a tortfeasor failed to disclose evidence that would demonstrate its liability in tort, the statute of limitations would be tolled under the doctrine of concealment. . . . [T]his is not the law.' "  One Star, 752 N.W.2d at 682-83 (quoting Mark K. v. Roman Catholic Archbishop, 79 Cal. Rptr. 2d 73 (Cal. Ct. App. 1998)).

and past.  These facts include the following about Father Scadron: he grew up in a disorganized family; he moved around throughout his adult life; he was unable to maintain a relationship with a woman; and he was considered by many to be emotionally unstable and religiously eccentric.  (Pls.' Statement of Responsive and Additional Facts Precluding Summ. J., Docket 32, at 4-15.)  Father Scadron may not have been considered by many people to be a "normal" individual, and many people may not have liked Father Scadron.  These facts, however, could not reasonably lead to a conclusion that Father Scadron was, or would be, a sexual assailant.

Plaintiffs also argue that defendant should have known about Father Scadron's propensity to sexually assault someone because there is a letter, written by an unrelated third party and dated November 15, 2000, indicating that Father Scadron had a history of being sexually abusive.  This argument is without merit for at least three reasons.  First, the letter in question does not indicate that Father Scadron was alleged to have done anything relating to sexual activity.  Rather, it only says that "[t]he charges I made against Fr. Christopher [Scadron] are false; there is no basis for them whatsoever.  Below I give you the reasons for my having made these false charges." (Docket 34, Ex. BBB at 44.)  Second, the letter was written approximately 13 years after the alleged sexual assault against Pamela occurred.  And third, the accuser explained in detail in the letter the

14

reasons why she made the false accusations against Father Scadron. The letter was written by an adult in a thoughtful and articulate manner. Knowledge of the letter could not reasonably lead one to conclude that Father Scadron sexually assaulted someone or that he may have been inclined to sexually assault someone.

There is no evidence that Father Scadron had a history of being a sexual abuser or that he would potentially become a sexual abuser. And there is nothing in the letter that would reasonably indicate that Father Scadron had committed a sexual assault or that he had a propensity to commit a sexual assault. There is insufficient evidence to create a material issue of fact as to whether defendant knew about the alleged sexual assault against Pamela or whether defendant should have known about Father Scadron's alleged propensity to commit a sexual assault. Thus, there is insufficient evidence to create a material issue of fact as to whether the doctrine of fraudulent concealment should apply in this case.

Plaintiffs also argue that the statutes of limitations should be tolled under the theory of estoppel by duress. See One Star, 752 N.W.2d at 683 (noting that "South Dakota has not recognized this exception to the statute of limitations."). If estoppel by duress was recognized in South Dakota, it "generally requires a showing that the duress be continuous." Id. (citations omitted).

Plaintiffs argue that the threats made by Father Scadron to Pamela about her and her children going to hell if she told anyone about what had happened were so outrageous that they should be construed as being continuous threats. Essentially, plaintiffs argue that the "continuous" requirement is satisfied because the statements were outrageous. Plaintiffs offer no legal support for their argument.

In analyzing the issue of estoppel by duress, the South Dakota Supreme Court never indicated that outrageousness would be an acceptable substitute for the continuous requirement. Rather, the Court indicated that the focus is to be placed on the continuing nature of the duress, not the severity of the duress. See id. (rejecting the application of estoppel by duress because the plaintiffs "identif[ied] no facts suggesting that the alleged duress continued from the time they were students until they filed this suit. They do not allege, either in their complaint or affidavits, that any threats continued during the forty years after they left St. Francis"). Thus, the court finds that even if South Dakota did recognize the theory of estoppel by duress, plaintiffs have not identified any evidence that the alleged duress was continuous. See id.

### III. Whether Defendant is Estopped From Raising a Statute of Limitations Defense.

Plaintiffs also argue that defendant should be estopped from raising a statute of limitations defense. Plaintiffs identify numerous cases where the

16

South Dakota Supreme Court discusses whether a defendant could be estopped from asserting a statute of limitations defense. Plaintiffs also assert that there is a material question of fact as to whether defendant's conduct resulted in equitable estoppel. Plaintiffs fail, however, to identify what question of fact would be at issue with regard to whether defendant should be estopped from raising a statute of limitations defense. The mere assertion that there is a material question of fact is insufficient to create one. Cf. Dakota, Minnesota & Eastern R.R. Corp. v. Acuity, 771 N.W.2d 623, 629 (S.D. 2009) (stating that in order to "establish a genuine, material issue for trial[,]" a party "must point to specific facts" (citations omitted)).

Moreover, the cases identified by plaintiffs do not support their position. One case relied on by plaintiffs is of no help because it merely recognizes the general proposition that it may be possible for a defendant to be estopped from raising a statute of limitations defense. See Schuster v. Woodmen Accident & Life Co., 361 N.W.2d 286, 289 (S.D. 1985). In the remaining cases, the South Dakota Supreme Court held that to successfully raise estoppel, the plaintiff must show that the defendant acted in such a way that induced the plaintiff into not bringing a claim until after the limitations period expired. See Sander v. Wright, 394 N.W.2d 896, 899 (S.D. 1986) (noting that the plaintiff "believed it was unnecessary to contact a lawyer because [American Family's claims adjuster] told them that

17

American Family would pay all of their bills"); Jandreau v. Sheesley Plumbing & Heating Co., 324 N.W.2d 266, 272 (S.D. 1982) ("[T]he record in the instant case does not show conduct by [the defendants] that could be construed as intentionally misleading [the plaintiff] into not asserting his legal rights."); Moody v. Tyler, Custom Combiners, 297 N.W.2d 179, 181 (S.D. 1980) (finding that there was no need for the employee to file a formal claim within the requisite time period because "the voluntary commencement by insurer of the payment of substantial benefits on appellant's behalf" supported the "determination that at the very least a tacit agreement had been reached regarding compensation"); Arbach v. Gruba, 232 N.W.2d 842, 845 (S.D. 1975) ("We are not convinced that plaintiff can establish all the elements of either estoppel or waiver since the reliance on defendant's statements was that of the jury and not of plaintiff.").[13] Plaintiffs fail, however, to identify any facts showing that defendant induced Pamela into not asserting her legal rights. Thus, defendant is not estopped from raising a statute of limitations defense.

---

[13] In Arbach, the South Dakota Supreme Court nonetheless effectively estopped the defendant's assertion of an otherwise valid statute of limitations defense because the "conduct f[e]ll[] into that category [that has] previously been entitled 'playing fast and loose with the courts.' " Arbach, 232 N.W.2d at 845 (citations omitted).

# CONCLUSION

Plaintiffs' causes of action accrued under SDCL 15-2-14 and 15-2-15 on the date that the alleged sexual assault occurred. Plaintiffs did not file suit until approximately 19 years later. The statutes of limitations were not tolled until 2007 under SDCL 15-2-22. And the statutes of limitations were not tolled under the doctrines of equitable tolling, fraudulent concealment, or estoppel by duress. Finally, defendant is not estopped from asserting a statute of limitations defense. Thus, defendant's motion for summary judgment is granted because plaintiffs filed their complaint beyond the applicable statutes of limitations. See Merkwan v. Leckey, 376 N.W.2d 52, 54 (S.D. 1985) ("A defense predicated upon the statute of limitations is meritorious and is not to be disregarded with disfavor[.]" (citing Arbach v. Gruba, 199 N.W.2d 697, 700 (S.D. 1972))). Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment (Docket 23) is granted;

IT IS FURTHER ORDERED that this case is dismissed with prejudice.

Dated February 26, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE